UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
JAN 10 2020
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

JUAN MITCHELL )
1227 Eastland Ave. )
Akron, Ohio 44305 )

CASE NO. 5:20 CV 59

JUDGE

JUDGE PEARSON

MAG. JUDGE LIMBERT

And )
)
SHANTAL WILKERSON )
1264 Crestview Ave. )
Akron, Ohio 44320 )
)
)
   Plaintiff )
)
vs. )
)
)
THE CITY OF AKRON POLICE )
DEPT. c/o THE CITY OF AKRON )
161 S. High Street, #202 )
Akron, Ohio 44308 )
)
   and )
)
)
PAMELA BROWN, individually )
and in her official capacity )
217 S. High Street )
Akron, Ohio 44308 )
)
)

COMPLAINT FOR:

1. Violation of 42 USC 1983
2. Conversion
3. Abuse of Process
4. Negligence
5. Tortious Interference with Business
   and Contractual Relations

JURY DEMAND ENDORSED
HEREIN

|  |  |
|---|---|
| and | ) |
|  | ) |
| **JOHN DOE 1, unknown defendant** | ) |
| address unknown | ) |
|  | ) |
| and | ) |
|  | ) |
| **JOHN DOE 2, unknown defendant** | ) |
| address unknown | ) |
|  | ) |
| and | ) |
|  | ) |
| **JANE DOE 1, unknown defendant** | ) |
| address unknown | ) |
|  | ) |
| and | ) |
|  | ) |
| **JANE DOE 2, unknown defendant** | ) |
| address unknown | ) |
|  | ) |
| and | ) |
|  | ) |
| **ABC COMPANY, unknown defendant** | ) |
| address unknown | ) |
|  | ) |
| **Defendants.** | ) |

Now come the above-referenced Plaintiff in, and for his Complaint against

Defendants allege as follows:

## PARTIES

1. Plaintiff Juan Mitchell is a resident of the City of Akron, Summit County, Ohio and at the time of the alleges Plaintiff Juan Mitchell is a resident of the City of Akron, Summit County, Ohio.

2. Plaintiff Shantal Wilkerson is a resident of the City of Akron, Summit County, Ohio.

3. Defendant, City of Akron, is a municipal corporation located in Akron, Ohio, and in Summit County, Ohio. The Akron Police Department is a division and/or department of the City of Akron.

4. Defendant Pamela Brown, is an individual, employed by the City of Akron as a detective, badge number 979.

5. Defendant Bruce Graham, is an individual, employed by the City of Akron as a detective, badge number 873, and at all times relevant was the supervisor of Brown.

6. Defendants John Doe 1, John Doe 2, Jane Doe 1, and Jane Doe 2, are individual defendants who are unknown to the Plaintiffs at this time and whose address is unknown.

7. Defendant ABC Company is a defendant company who is unknown to the Plaintiffs at this time and whose address is unknown.

8. At all times relevant, unless otherwise stated, the facts giving rise to this Complaint and/or the actions of the parties actions occurred or originated within the territorial boundaries of Summit County, Ohio.

## **JURISDICTION**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S. Code § 1331, 28 U.S.C. § 1332, and 42 U.S.C.§ 1983. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## Factual Allegations

10. On or about June 24, 2014, Mitchell purchased a 2007 Chevrolet Tahoe VIN 1GNFK13007J377848 ("Tahoe") from Best Deals. (See Bill of Sale/Purchase Agreement attached as "Exhibit 1" and incorporated herein as if fully rewritten).

11. Mitchell had an ongoing business relationship with Defendants Yasin, Mustafa, and Best Deals.

12. On or about September 3, 2014, Best Deals applied for a title for the Tahoe, whereby transferring ownership to Mitchell via Ohio Motor Vehicle Title No. 7706212723. Best Deals maintained interest in the Tahoe only as a lienholder.

13. On or about July 23, 2014, Wilkerson purchased a 2005 Toyota Prius VIN JTDKB20U757040270 ("Pruis") from Best Deals. (See Bill of Sale/Purchase Agreement attached as "Exhibit 2" and incorporated herein as if fully rewritten).

14. On or about May 22, 2015, Best Deals discharged the lien for the Prius upon full satisfaction of any monies due from Wilkerson to Best Deals.

15. Wilkerson then obtained a new title listing herself and Mitchell as co-owners.

16. On or about June 1, 2015, Wilkerson return to Best Deals for Best Deals to perform repairs on the Prius.

21. Best Deals and/or its agents and/or principals informed Wilkerson that the parts needed for the repairs had to be shipped to them and would require some additional time.

22. Based upon Best Deals and/or its agents and/or principals' assurances, Wilkerson left her Prius in the care and custody of Best Deals and/or its agents and/or principals.

23. When Wilkerson left her vehicle in the care and custody of Best Deals and/or its agents and/or principals, her vehicle registration was in the glove compartment of the vehicle.

24. On or about June 29, 2015, Best Deals and/or its agents and/or principals fraudulently reported to the Ohio Bureau of Motor Vehicles that Wilkerson had resold the Prius via Ohio Motor Vehicle Title No. 7706482978.

25. The signatures contained on the title to be transferred were not Mitchell or Wilkerson's signatures, nor were they aware of this transfer of title.

26. Best Deals and/or its agents and/or principals fraudulently and with purpose misled the Bureau of Motor Vehicles so that it would transfer ownership of the Prius to Best Deals and/or its agents and/or principals.

27. On or about December 10, 2014, defendant Best Deals Auto Sales fraudulently reported to the Ohio Bureau of Motor Vehicles that it had repossessed the Tahoe, belonging to Juan Mitchell via Ohio Motor Vehicle Title No. 7706314383.

28. On March 11, 2015, Juan Mitchell received a traffic ticket from Kent State Police Department for driving the 2007 Chevrolet Tahoe VIN 1GNFK13007J377848.

29. Juan Mitchell remained in possession of the 2007 Chevrolet Tahoe VIN 1GNFK13007J377848, throughout the time defendant Best Deals Auto Sales claimed it was repossessed.

30. On or about July 18, 2015, upon discovering this fraudulent transaction, Mitchell and Wilkerson confronted Yasin and Best Deals and/or its agents and/or principals regarding the illegal transfer of the Pruis and the illegal transfer of the Tahoe; afterwhich, Mitchell, Wilkerson and Best Deals and/or its agents and/or principals renegotiated the terms of purchase of the Tahoe in exchange for Wilkerson agreeing not to pursue legal actions against Yasin, Best Deals, and/or its agents and/or principals.

31. In order to avoid legal proceedings, Yasin, Best Deals, and/or its agents and/or principals and Mitchell and Wilkerson agreed that Best Deals and/or its agents and/or principals could retain the Pruis and in exchange, the total cost of the Prius, $7,737.50, would be deducted from the total balance due on the Tahoe. They further agreed that Mitchell could satisfy any remaining monies owed to Best Deals and/or its agents and/or principals for the Tahoe upon payment of an additional $6,000.00.

32. As a result of this arrangement, on or about July 28, 2015, Best Deals and/or its agents and/or principals returned title of the Tahoe to Mitchell, via Ohio Motor Vehicle Title No. 7706556353, listing Best Deals as the lienholder.

33. On or about August 6, 2015, Mitchell satisfied the terms of the agreement by remitting $6,000.00 to Yasin, Best Deals and/or its agents and/or principals for the purchase of the Tahoe. Upon receiving payment, Mustafa Yasin signed the title and returned it to Mitchell.

34. When Mitchell and his friend who accompanied him asked for a receipt, Yasin became very agitated.

35. The next day, on or about August 7, 2015, Mitchell filed for a new title for the Tahoe in order to designate Mitchell and another co-owner Kalah Ellis as the owners of the Tahoe and to remove Best Deals and/or its agents and/or principals as the lien holder via Motor Vehicle Title No. 7706568454.

36. On or about August 14, 2015, Mitchell drove the Tahoe to Skipco Auto Auction to be auctioned on August 15, 2015 in order to satisfy a debt owed to Towpath Credit Union ("Towpath"), with the approval of Towpath.

37. On or about August 15, 2015, the Tahoe VIN 1GNFK13007J377848 was auctioned by Skipco Auto Auction but the bid was too low. Afterwards, Mitchell and Ellis requested a new Title for the Tahoe, as Towpath's agent still had the original title in his physical possession and they had located an immediate private buyer.

38. On or about August 23, 2015, Mitchell met with private buyer, Brendon Butler, who was to purchase the Tahoe for $14,500.00 plus tax, with $13,500.00 financed by Butler through Towpath.

39. On or about August 25, 2015, Ellis and Butler met with Towpath to complete the loan process and sign over the title to the Tahoe.

40. Unbeknownst to Mitchell, on or about August 21, 2015, Best Deals and/or its agents and/or principals filed a police report (Report #15-20638) with the City of Akron Police Department ("APD") indicating that the Tahoe had been stolen from their car lot, although Best Deals and/or its agents and/or principals were not owners of the Tahoe.

41. On or about August 24, 2015, Best Deals and/or its agents and/or principals filed another police report with APD (Report #15-20825) indicating that the Mitchell had stolen the Tahoe's title and forged it.

42. According to Brown, Yasin had reported that all documents proving plaintiff either purchased or did not purchase the Tahoe were missing from Best Deals and/or its agents and/or principals, and that Best Deals' video surveillance was not functioning between July, 28, 2015 and August 7, 2015.

43. On or about August 25, 2015, Brown contacted Mitchell and informed his of the allegations made by Yasin, Best Deals, and/or its agents and/or principals. Mitchell advised Brown he had purchased the Tahoe from Best Deals and/or its agents and/or principals.

44. On or about August 26, 2015, Brown contacted Towpath and informed Towpath that Mitchell had stolen the Tahoe and forged the title given to them. As a result of these misrepresentations, Towpath cancelled the $13,500.00 check issued in furtherance of the sale of the Tahoe to Butler.

45. Brown's actions maliciously and with purpose interfered with Mitchell's contractual and business relationship with Towpath and Butler.

46. On or about August 26, 2015, Brown also contacted Mitchell's bank, Seventeenth Credit Union, and falsely informed them that Mitchell had stolen the Tahoe and that the check in the amount of $13,500.00 would be canceled. As a result of this erroneous information, Seventeenth froze Mitchell's accounts.

47. Brown's actions maliciously and with purpose interfered with Mitchell's contractual and business relationship with Seventeenth Credit Union.

48. On or about August 26, 2015, Brown wrote a letter to BMV requesting cancellation, rather than a block or hold, of the title of the Tahoe, with no legal right or justification to do so.

49. On or about August 27, 2015, APD charged Mitchell with grand theft of the Tahoe, receiving stolen property, and tampering with records, based on the false statements of Best Deals, and/or its agents and/or principals and at Brown's request, issued a warrant for his arrest.

50. Brown stated in report #15-20825 that Mitchell forged the vehicle title to put vehicle in his name, although Ohio Motor Vehicle Title No. 7706556353 transferred ownership of the Tahoe to Mitchell and that Ohio BMV records indicated that Best Deals and/or its agents and/or principals applied for the title.

51. On or about August 28, 2015, APD seized the Tahoe, which was in the possession of Butler because it had been reported stolen.

52. On or about August 28, 2015, APD entered Mitchell's home and seized Mitchell.

53. On or about August 29, 2015, Brown, under the supervision of Graham, sent another letter to the Ohio BMV indicating that the Tahoe had been stolen by Mitchell. Brown also informed the Ohio BMV that Mitchell forged titles. Brown then requested that the Ohio BMV cancel all titles belonging to Mitchell.

54. As of August 29, 2015, Mitchell had not been found guilty of the charges related to the Tahoe and was still presumed innocent.

55. The charges against Mitchell regarding Best Deals and the Tahoe were eventually dismissed by the Summit County Prosecutors Office; however, at the time of the dismissal, APD, at the direction

of Brown, had improperly released the Tahoe to Best Deals and/or its agents and/or principals, who were not the owners of the Tahoe.

56. On or about August 31, 2015, Best Deals and/or its agents and/or principals, perhaps with the assistance of Brown, drafted repossession documents, indicating that Best Deals and/or its agents and/or principals were the owners of the Tahoe, and submitted the same to APD in order to allow Best Deals and/or its agents and/or principals to procure possession of the Tahoe.

57. Brown and/or Graham authorized the release of the Tahoe to Best Deals and/or its agents and/or principals, despite their lack of ownership.

58. All efforts Mitchell made during his criminal case to return the Tahoe to APD custody or to return the Tahoe to him proved to be fruitless, as the property had already been released to Best Deals and/or its agents and/or principals, and under Mitchell's criminal case, the Summit County Court did not have jurisdiction to order Best Deals and/or its agents and/or principals to return the vehicle, as it was a civil matter.

59. On or about September 15, 2015, Brown presented facts to the Summit County Grand Jury, presumably under oath, based on statements and facts known to her to be false or misrepresentations, with purpose to maliciously injure Mitchell's character and/or property. As a result, Mitchell was indicted with felony charges under Summit County Case# 2015 CR 08-2671.

60. On or about October 16, 2015, Mitchell and Wilkerson met with Brown and presented her with a police report against Best Deals and/or its agents and/or principals for the forging of the title to the Prius. Brown informed Mitchell and Wilkerson she knew how Best Deals got the Pruis and that she did not care.

61. As a result of this conversation, Mitchell and Wilkerson called Graham and informed him of Brown's conduct. Graham merely stated that they had returned the Tahoe to its rightful owner and did nothing about the forgery of the Pruis title.

62. On or about October 20, 2015, the Ohio BMV canceled the title giving Mitchell and Ellis ownership of the Tahoe, as requested by Brown.

63. On or about October 21, 2015, Brown, under the supervision of Graham, wrote a third letter to the Ohio BMV, requesting that all the Tahoe titles be canceled, except the one listing only Best deals as the owner.

64. The charges against Mitchell regarding Best Deals and the Tahoe were eventually dismissed by the Summit County Prosecutor's Office; however, at the time of the dismissal, APD, at the direction of Brown, had improperly released the Tahoe to Best Deals and/or its agents and/or principals, who were not the owners of the Tahoe.

65. Upon dismissal of the aforesaid charges Mitchell filed a motion for return of his property which was denied for lack of jurisdiction.

66. It was later discovered that brown and her family accepted gifts in the form of vehicles from best deals and/or its agents and/or principals.

## COUNT ONE
### Violation of 42 USC 1983

67. Plaintiffs incorporate Paragraph 1 through 65 herein by reference, as if fully rewritten.

68. Defendants City of Akron/Akron Police Department, Brown, and/or Graham, by way of their actions, acting under the color of law and the authority of the City of Akron, as it relates to Plaintiff Mitchell subjected Plaintiff Mitchell to a deprivation of their fundamental rights, privileges. and immunities guaranteed under the U.S. Constitution.

69. Defendants City of Akron/Akron Police Department, Brown, and/or Graham violated Mitchell's due Process rights guaranteed under the U.S. Constitutions when they deprived them of their fundamental rights, privileges, and immunities as it relates to their property without due process of law.

70. Specifically as to Plaintiff Mitchell, Defendants City of Akron/Akron Police Department, Brown, and/or Graham, deprived him of his fundamental rights, privileges, and immunities as it relates to liberty when he was falsely charged with and arrested for grand theft, receiving stolen property, and tampering with records in relation to his own vehicle and as it pertains to Best Deals and the Tahoe.

71. Specifically as to Mitchell, Defendants City of Akron/Akron Police Department, Brown, and/or Graham deprived him of his fundamental rights, privileges, and immunities as it relates to his property when Defendants City of Akron/Akron Police Department, Brown, and/or Graham interfered with monies he received for a valid sale of his vehicle, provided false information to his bank, causing his accounts to be frozen, voided all of his titles, deprived him of his property interest in the Tahoe, released his property to someone who was not the rightful owner of his vehicle, and any other actions depriving him of property relating to these actions outlined herein.

72. As to the Prius, Defendants City of Akron/Akron Police Department, Brown, and/or Graham, deprived Plaintiff Mitchell of his fundamental rights, privileges, and immunities as it relates to property interests in the Prius when they refused to process, acknowledge, or even prosecute Best Deals for fraudulently transferring the title of the Prius and improperly taking ownership of her vehicle, which was contrary to the law.

73. As a direct and proximate cause of Defendants City of Akron/Akron Police Department, Brown, and/or Graham's actions or lack of actions, Plaintiff Mitchell has incurred damages including, but not limited to direct and compensatory damages, special damages, and the fees and costs associated with this action in excess of $75,000.00, including but not limited to the replacement cost of the Tahoe and Prius.

## COUNT TWO
### Conversion

74. Plaintiffs incorporate Paragraph 1 through 72 herein by reference, as if fully rewritten.

75. Mitchell was the titled owner of the Tahoe when it was in APD custody, after the title transferring the truck to Burton was voided and the Towpath transaction was reversed.

76. Best Deals had interest in the Tahoe only as a lienholder.

77. Brown, under the supervision of Graham, wrongfully possessed the Tahoe, as the Tahoe was not a stolen vehicle.

78. Rather than return the vehicle to a titled owner, APD, Brown and Graham authorized the release of Mitchell's vehicle to Best Deals, who was not a titled owner, depriving the rightful owner of his property.

79. Mitchell was entitled to immediate possession of the Tahoe.

80. Despite repeated request, after the Tahoe was released to Best Deals by APD, Best Deals and APD refused to take any efforts to return the vehicle to its rightful owner.

81. In fact, APD, Brown, and Best Deals, and/or its agents and/or principals further caused titles to be voided so that the vehicle to be placed in Best Deals' name, which allowed Best Deals to eventually sell the Tahoe and keep the proceeds of the Tahoe, to the detriment of Mitchell.

82. At no time did Best Deals forward any proceed from the sale of the Tahoe to Mitchell, to his detriment.

83. APD and Brown permanently deprived Mitchell of the Tahoe and converted the property to Best Deals, to the detriment of Mitchell.

84. APD, Brown, under the supervision of Graham, and Best Deals, and/or its agents and/or principals exerted wrongful dominion over the Tahoe and denied Mitchell's right to his property.

85. As a direct and proximate cause of Defendants City of Akron/Akron Police Department, Brown, and/or Graham's actions or lack of actions, Mitchell has incurred damages including, but not limited to direct and compensatory damages, special damages, and the fees and costs associated with this action in excess of $75,000.00, including but not limited to the replacement cost of the Tahoe.

## COUNT THREE
### Abuse of Process

86. Plaintiffs incorporate Paragraph 1 through 94 herein by reference, as if fully rewritten.

87. In the alternative to the claim of malicious prosecution, Defendants APD and Brown, under the supervision of Graham, engaged in Abuse of Process.

88. Defendants APD and Brown, under the supervision of Graham, began legal proceedings resulting in Summit County Common Pleas Court case number CR-2015-08-2671-A under the guise of having probable cause to charge Mitchell with Grand Theft and Forgery.

89. However, Defendants APD and Brown, under the supervision of Graham, perverted the lawsuit when they changed, amended and/or voided valid motor vehicle titles in an effort to accomplish the ulterior purpose of harming Mitchell and providing unlawful gain to Best Deals and/or its agents and/or its principals.

90. As a direct and proximate cause of Defendants APD and Brown, Abuse of Process, Mitchell has incurred damages including, but not limited to direct and compensatory damages, special damages, and the fees and costs associated with this action in excess of $25,000.00, including but not limited to the replacement cost of the Tahoe.

## COUNT FOUR
### Negligence
### (Common Law and Negligence in Proprietary Functions)

91. Plaintiffs incorporate Paragraph 1 through 99 herein by reference, as if fully rewritten.

92. Defendants APD, and Brown, with the supervision of Graham, and owed Plaintiffs certain duties as it relates to their vehicles.

93. Defendants APD and Graham owed Mitchell a duty to protect Mitchell from injury and/or damage arising as a result of acts which could be considered within the scope of Brown's employment as a detective and/or employee of APD.

94. Defendants APD and Graham breached this duty when they allowed Brown to release Mitchell's vehicle to Best Deals and/or its agents and/or its principals, and taking other actions in relations to Mitchell's titles which caused injury and/or damage to Mitchell.

95. Brown owed Mitchell a duty to act within the scope of her employment as an APD detective.

96. Brown breached this duty when she released Mitchell's vehicle to Best Deals and/or its agents and/or its principals, brought charges against Mitchell which were not supported by the evidence, and cancelled, transferred and/or voided motor vehicle titles in Mitchell's name.

97. Most recently, as of November 16, 2017, Mitchell discovered that APD and perhaps Brown have further breached their duties to him by voiding any recent titles he has and allegedly reporting vehicles which he legally purchased as being stolen.

98. APD and Brown, with the supervision of Graham, breached their duty to Wilkerson to investigate allegations presented to them when they failed to investigate Best Deals and/or its agents and/or its principals' fraudulent transfer of her Toyota Prius.

99. Best Deals and/or its agents and/or principals owed Mitchell certain duties to operate their business fairly, not in bad faith, and according to the law.

100. Best Deals and/or its agents and/or principals breached their duties to Mitchell when it transferred the title to the Prius without authority, reported the Tahoe stolen, and reported that Mitchell broke into their location and stole documents from them.

101. As a direct and proximate cause of Defendants APD and Brown, negligence, Mitchell have incurred damages including, but not limited to direct and compensatory damages, special damages, and the fees and costs associated

with this action in excess of $75,000.00, including but not limited to the replacement costs of the Tahoe and the Prius.

## COUNT FIVE
### Tortious Interference with Business and Contractual Relations

128. Plaintiffs incorporate Paragraph 1 through 129 herein by reference, as if fully rewritten.

129. Defendant Brown tortiously interfered with Mitchell's business and contractual relations.

130. Defendant Brown knew that Mitchell had an existing business and/or contractual relationship with Towpath Credit Union.

131. Defendant Brown interfered with Mitchell's business and contractual relationship with Towpath credit union by interfering with Mitchell's sale of the Tahoe to Butler and alerting Towpath that the Tahoe was stolen, when, in fact, it was not.

132. Defendant Brown interfered with Mitchell's business and contractual relationship with Seventeenth Credit Union by informing them that Mitchell's deposit would be cancelled and that his accounts there should be frozen.

133. Defendant Brown interfered with Mitchell's business and contractual relationship with the State of Ohio Bureau of Motor Vehicles by interfering in Mitchell's ability to own vehicles and transferring, voiding, or altering titles, as well as informing the BMV that Mitchell committed fraud and that vehicles were stolen, when, in fact, that was not the case.

134. Defendant Brown acted with deliberate purpose and intent to interfere with Mitchell's contractual and business relationships and lacked the justification and privilege to do so, as her statements or purported catalysts for her actions were false and calculated to be harmful to Defendant.

135. As a direct and proximate cause of Brown's tortious interference with Mitchell's contractual and/or business relationships has caused Mitchell harm, including but not limited to the loss of business and contractual relationships and opportunities, compensation and caused Mitchell to incur damages including, but not limited to direct and compensatory damages, special damages, and the fees and costs associated with this action in excess of $75,000.00.

WHEREFORE, based on the above, the Plaintiffs pray for the following:

1. Judgment in favor of the Plaintiffs in this case for all counts

2. Compensatory, direct, and special damages in excess of $75,000.00 for each count in this Complaint.

3. Punitive damages in an amount to be determined by the Court in excess of $75,000.00.

4. Any other costs associated with this action.

**Jury Demand Endorsed Herein.**

Respectfully submitted,

/s/ Juan Mitchell
Plaintiff Pro Se
796 Clearview Ave.
Akron, Ohio 44314
(330) 245-4602
jmitch42@kent.edu


/s/ Shantal Wilkerson
Plaintiff Pro Se
1264 Crestview Ave.
Akron, Ohio 44320
(419)544-6860

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all counts in the Complaint.

/s/ Shantal Wilkerson
Plaintiff Pro Se
1264 Crestview Ave.
Akron, Ohio 44320
(419)544-6860

/s/ Juan Mitchell
Plaintiff Pro Se
796 Clearview Ave.
Akron, Ohio 44314
(330) 245-4602
jmitch42@kent.edu

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent by certified U.S. mail and a Request for Service duly filed with the Summit County Clerk of Courts.

/s/ Shantal Wilkerson
Plaintiff Pro Se
1264 Crestview Ave.
Akron, Ohio 44320
(419)544-6860

/s/ Juan Mitchell
Plaintiff Pro Se
796 Clearview Ave.
Akron, Ohio 44314
(330) 245-4602
jmitch42@kent.edu